# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLYDE GREEN,** | : | **CIVIL NO. 1:CV-12-00982** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **WARDEN JON FISHER, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Clyde Green, an inmate currently confined at the State Correctional Institution at Smithfield ("SCI-Smithfield") in Huntingdon, Pennsylvania, initiated this civil rights action pursuant to 42 U.S.C. § 1983 by filing a *pro se* complaint on May 24, 2012, followed by an amended complaint on May 1, 2013. (Doc. 44.) In addition to his Section 1983 claims, Plaintiff has asserted pendant state law claims of negligence. Named as Defendants are Corizon, Inc., and two medical providers at SCI-Smithfield ("Medical Defendants"), and a number of Department of Corrections ("DOC") employees located at SCI-Smithfield ("DOC Defendants").[1] In the amended complaint, Plaintiff alleges that he sustained injuries on two separate occasions at SCI-Smithfield and has since been denied adequate medical care. As relief, he seeks compensatory and punitive damages.

---

[1] The Medical Defendants are as follows: Corizon, Inc., and two employees, Christina Doll and Ronald Long. The DOC Defendants are as follows: Jon Fisher, Rebecca Sue Hannah, William Driebelbis, James Fouse, William Felton, and Tim Rohrer.

Presently before the court are two motions to dismiss, filed by both sets of Defendants. (Docs. 45 & 48.) For the reasons set forth below, the motions will be granted in part and denied in part.

## I.    Background

For purposes of disposition of the instant motions to dismiss, the factual allegations asserted in the amended complaint will be accepted as true and viewed in a light most favorable to Plaintiff.

### A.    Facts

In the amended complaint, Plaintiff provides the following factual background with respect to his claims. Plaintiff alleges that the dining hall tables, seating, and flooring at SCI-Smithfield are old, deteriorating, and unsafe (Doc. 44 ¶¶ 13, 14), alleging that "The tables in question are the original tables that have been in service more than twenty (20) years and now accommodate during feeding thirteen (1300) hundred inmates three (3) times a day" (*Id*. ¶ 14). On several occasions prior to September 30, 2011, Plaintiff expressed concern about these conditions to DOC Defendants Fisher, Fouse, Felton, and Rohrer. (*Id*. ¶ 13.) However, Plaintiff's "complaints and grievances regarding instances of unstable tables, seating breakage, and flooring seeping foul smelling puddles of water underneath the tables foundation,

were ignored and/or denied" by DOC Defendants. (*Id.* ¶ 14.) On September 30, 2011, Plaintiff entered the dining hall to eat, picked up his food tray, and was directed to sit "at what was obviously an unstable stable." (*Id.* ¶ 15.) When Plaintiff sat down at the table, it snapped from its floor foundation, and Plaintiff fell to the floor. (*Id.*) In an attempt to break his fall, Plaintiff injured his wrist and left hand, and struck the back of his head. (*Id.* ¶ 16.) He also felt immediate pain in his lower back and buttocks. (*Id.*)

Plaintiff was transported to the medical department and examined by a physician's assistant. (*Id.*) He was told that he had no swelling or lumps to the back of his head, although it was tender. (*Id.*) He was also told that he had suffered a muscle strain to his lower back. (*Id.*) He was given valium and ibuprofen, his wrist was wrapped, and he was sent to his housing unit. (*Id.*)

In the early morning hours of October 1, 2011, Plaintiff was removed from his cell by a stretcher and eventually taken to Blair County Hospital for lower back pain and left leg numbness and pain. (*Id.* ¶ 17.) X-rays revealed no broken bones, but the doctor stated nerve and/or ligament damage could not be ruled out. (*Id.*)

Upon his return to SCI-Smithfield, Plaintiff was informed that Drs. Doll and Long had been contacted, and he was then placed in an observation cell in the intake housing unit which was being used as a temporary infirmary. (*Id.* ¶ 18.) Dr. Long

3

prescribed valium and vicodin. (*Id*.) The observation cell was not equipped to meet Plaintiff's needs, as it did not have a "help call" button or support rails. (*Id*.) On October 3, 2011, Plaintiff lost consciousness and fell in this cell while attempting to use the bathroom after he suffered "a paralyzing lower back and leg pain." (*Id*.) Plaintiff was discovered by an officer making his rounds and was taken again to Blair County Hospital for x-rays and a CT scan. (*Id*.)

When Plaintiff returned to SCI-Smithfield, he was placed in a psychological observation cell with 24-hour surveillance and prescribed Tylenol and ibuprofen. (*Id*. ¶ 19.) On October 5, 2011, Plaintiff was informed that the x-rays and CT scan revealed no abnormalities. (*Id*.) Despite his continued complaints of pain in his lower back and pain and numbness in his leg, which he alleges were ignored by Defendants Doll and Long, Plaintiff was released from the infirmary . (*Id*.) However, Plaintiff acknowledges that he was given a cane to assist him with walking. (*Id*.)

In the following days, medical department staff visited Plaintiff's cell, his meals were delivered, but he was forced to walk 1,200 feet to retrieve his medication. (*Id*. ¶ 20.) His complaints and grievances regarding his medical condition were ignored by Defendant Driebelbis. (*Id*. ¶ 21.) His condition worsened, and by January 6, 2012, an MRI revealed a herniated disk. (*Id*.) Further, the medical department

accused him of "theatrics," and began to charge him for "generated complaints of continued pain." (*Id.* ¶ 22.)

On April 11, 2012, Plaintiff was referred to a neurologist, who recommended EGG and EMG testing, as well as cortisone shots for pain relief. (*Id.* ¶ 23.) The medical department, including Defendants Driebelbis, Long, Doll, and Corizon, denied the cortisone treatment. (*Id.*) Also, his complaints and grievances regarding the denial of treatment were rejected by Defendant Fisher. (*Id.*)

Plaintiff alleges that due to his injuries from the fall from the table, he is permanently disabled, no longer able to exercise, and must use a cane to walk, wear a neck brace, and take medications daily for pain. (*Id.*)

**B.    Procedural History**

Plaintiff filed his original complaint and motion for leave to proceed *in forma pauperis* on May 24, 2012. (Docs. 1 & 3.) By order dated June 7, 2012, the court granted the motion to proceed *in forma pauperis* and directed service of the complaint on the Defendants named therein. (Doc. 10.)

DOC Defendants filed a motion to dismiss the complaint and brief in support on July 11, 2012. (Docs. 20 & 21.) Medical Defendants filed a motion to dismiss and supporting brief on July 16, 2012. (Docs. 23 & 24.) Plaintiff filed briefs in opposition to these motions on July 25, 2012, and August 1, 2012, respectively.

(Docs. 26 & 28.) Medical Defendants filed a reply brief on August 8, 2012. (Doc. 30.) Further, after being granted an extension of time, (*see* Doc. 27), Plaintiff filed a certificate of merit on August 8, 2012, as to Defendants Doll and Long declaring that expert testimony was unnecessary to support his medical negligence claim, (Doc. 29). Thereafter, on February 22, 2013, the court granted the motions to dismiss with prejudice in part and without prejudice in part. (Doc. 37.) In addition, Plaintiff was permitted to amend his complaint as to those claims that were dismissed without prejudice. (*Id*.)

Plaintiff filed his amended complaint on May 1, 2013. (Doc. 44.) On May 7, 2013, Medical Defendants filed a motion to dismiss. (Doc. 45.) On May 13, 2013, DOC Defendants filed a motion to dismiss. (Doc. 48.) Plaintiff filed his opposition on May 31, 2013. (Doc. 53 & 54.) Medical Defendants filed a reply on June 10, 2013. (Doc. 56.) Thus, the motions to dismiss are now ripe for disposition.

## II.   Standard of Review

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

6

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in Rule 8(a)(2) "depends on the type of case[, because] some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted). "[A] situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id.* In such a case, a defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), and all reasonable inferences permitted by the factual allegations contained therein, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), and view them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570) (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged"); *see also Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007). Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 664. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d

8

Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment" (internal quotation omitted)). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the

grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.   Discussion

In order to state a viable Section 1983 claim, a plaintiff must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law; and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). The defendant's conduct must have a close causal connection to the plaintiff's injury in order for Section 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[2] A prerequisite for a viable civil rights claim is that the defendant directed, or knew of and acquiesced in, the deprivation of the plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). On its face, Section 1983 creates no exceptions to the liability it imposes, nor does it speak of immunity for any individual who might deprive another of civil rights. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268

---

[2] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285 (internal citations omitted).

(1993).  Nevertheless, it is well-settled that certain government officials possess immunity from Section 1983 liability.  *Id.*

As stated above, there are two motions to dismiss pending in the instant case. In the DOC Defendants' motion to dismiss, they argue that the amended complaint should be dismissed on the following grounds: (1) Plaintiff has failed to state a section 1983 conditions of confinement claim related to the table against DOC Defendants Driebelbis, Fisher and Hannah; (2) the court previously dismissed with prejudice Plaintiff's medical care-related deliberate indifference claim against the DOC Defendants; (3) Plaintiff has failed to state a claim of medical negligence against all DOC Defendants; and (4) Plaintiff has failed to state a claim of negligence related to the table against DOC Defendant Driebelbis.  (Doc. 49.)  In the Medical Defendants' motion to dismiss, they argue that the amended complaint should be dismissed on the following grounds: (1) Plaintiff has failed to set forth a claim of Eighth Amendment deliberate indifference to a serious medical need against Defendants Long and Doll; (2) the medical malpractice claims should be dismissed because Plaintiff cannot support them without expert testimony; and (3) Plaintiff's claim for punitive damages is a form of relief and should not stand as a separate cause of action, and the complaint otherwise lacks factual support for an award of punitive

damages.[3] (Doc. 46.) The court will address the motions to dismiss in the context of the claims asserted by Plaintiff in his amended complaint.

## A.    <u>Eighth Amendment Conditions of Confinement Claims</u>

In his amended complaint, Plaintiff alleges that the conditions of the inmate dining hall and infirmary cell at SCI-Smithfield violated his right to be free from cruel and unusual punishment. Addressing DOC Defendants' motion to dismiss first, DOC Defendants argue that Plaintiff has failed to state a claim related to the condition of the dining table against Defendants Driebelbis, Fisher and Hannah, as these Defendants had no personal involvement in the alleged wrongdoing.

Conditions of confinement may violate the Eighth Amendment if they satisfy two criteria. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the conditions alleged must be sufficiently serious such that the official's act or omission results in the denial of "the minimal civilized measure of life's necessities." *Id*. (citation omitted). Second, the officials responsible for these conditions must exhibit

---

[3] In his brief in opposition to the Medical Defendants' motion to dismiss, Plaintiff asks this court to consider whether to award punitive damages for his section 1983 and negligence claims. (Doc. 53 at 6.) Based on Plaintiff's counter argument to Medical Defendants' motion to dismiss here, the court will not consider Plaintiff's Count IV - Punitive Damages as a separate cause of action; rather, the court will construe this section as a request for relief. Further, based on the court's disposition of both motions to dismiss, the court will defer ruling upon punitive damages at this time.

"deliberate indifference" to the inmate's health and safety. *Id*. They must act with a state of mind "more blameworthy than mere negligence." *Id*. at 835.

Further, it is well established that personal liability under § 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g.*, *Rizzo v. Goode*, 423 U.S. 362, 368 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976). It is also well settled in the Third Circuit that the defendant's personal involvement in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Hampton*, 546 F.2d at 1082. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which a plaintiff's claims are based. *Id*. As the court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207 (citations omitted). Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not be subject the official to section 1983 liability. *Id*. at 1208.

13

As to Defendant Driebelbis, DOC Defendants argue that, as the Corrections Health Care Administrator ("CHCA"), Defendant Driebelbis had nothing to do with the condition of the dining hall table. They also argue that Plaintiff does not allege that he notified Defendant Driebelbis of his concerns with the condition of the table. From a review of the amended complaint, the court agrees with DOC Defendants' arguments in this respect. Indeed, in his brief in opposition to DOC Defendants' motion to dismiss, Plaintiff alleges that he submitted written complaints regarding the condition of the dining tables only to Defendants Fisher, Hannah, Fouse, Felton, and Rohrer. (Doc. 54 at 2.) Because Plaintiff has failed to allege any personal involvement on the part of Defendant Driebelbis with respect to the condition of the dining table, DOC Defendants' motion to dismiss will be granted as to Defendant Driebelbis, and this claim against him will be dismissed.

Turning to DOC Defendants Fisher and Hannah, SCI-Smithfield's Warden and Deputy Warden, respectively, DOC Defendants argue that Plaintiff has failed allege personal involvement of these Defendants regarding the condition of the dining table. Rather, Plaintiff is simply attempting to impose liability on these Defendants based on their supervisory status alone, which does not subject them to section 1983 liability. To reiterate, to state a cause of action against a supervising official in a civil rights action, the plaintiff must show that the supervising official's misconduct cannot

14

have been simply a failure to act, but the official must have played an "affirmative part" in the alleged misconduct. *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). As the Third Circuit Court of Appeals observed in *Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3d Cir. 2001):

> [I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. Rather, the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a "relationship between the 'identified deficiency' and the 'ultimate injury.'"

*Id*. at 216 (quoting *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

In this case, Plaintiff alleges that, prior to his fall on September 30, 2011, he expressed his concern about the unsafe dining tables and other conditions in the dining hall to, *inter alia*, Defendants Fisher and Hannah, but his complaints and grievances were ignored and/or denied. (Doc. 44 ¶¶ 13, 14.) As a result, Plaintiff asserts that these Defendants "knew or should have known the need for repairs and/or replacements of the unsafe deteriorating conditions of the tables in the inmates' dining hall that created an unsafe environment which resulted in Plaintiff's injuries." (*Id*. ¶ 17.) In their motion to dismiss, Defendants Fisher and Hannah argue that Plaintiff's claim fails because he does not allege that they "actually viewed the tables and chairs" or "were aware of prior instances where someone was actually injured by

the breakage of a table or chair;" rather he only alleged that they had prior notice of the conditions. (Doc. 49 at 4.) At this stage in the litigation, Defendant's argument that SCI-Smithfield's Warden and Deputy Warden, both of whom were expressly tasked with the supervision of the facility, must be dismissed from this claim because Plaintiff failed to allege that they "actually viewed" the inadequate conditions or were aware of prior instances of injury, does not operate to bar liability. Instead, given the nature of Plaintiff's allegations of an obviously inadequate condition in the inmates' dining hall, the liberal treatment afforded *pro se* complaints, and the plaintiff-friendly standard applicable to motions to dismiss, Plaintiff has sufficiently alleged personal involvement by Defendants Fisher and Hannah in the unconstitutional conduct. As such, DOC Defendants' motion to dismiss here will be denied, and the conditions of confinement claim related to the table against DOC Defendants Fisher, Hannah, Fouse, Felton, and Rohrer will be permitted proceed. Further, because DOC Defendants make no argument in support of dismissal of the conditions of confinement claim related to the infirmary cell, this claim shall proceed as well against all DOC Defendants.

Turning to these Eighth Amendment claims as they apply to Medical Defendants, the court initially notes that Plaintiff's factual allegations in his amended complaint with respect to the conditions of the dining hall table do not implicate

16

Medical Defendants. (*See* Doc. 50.) Plaintiff has not claimed that these Defendants had any knowledge of the conditions of the dining hall, nor had any control over decisions with respect to the dining hall conditions. Without any allegations of personal involvement in the alleged unsafe conditions of the dining hall, the court cannot impose liability under section 1983 upon these Defendants simply because Plaintiff decided to name them as Defendants in the amended complaint. Accordingly, the conditions of confinement claim related to the dining hall table asserted in the amended complaint against Medical Defendants will be dismissed.

With respect to the conditions of the infirmary cell, Medical Defendants make no argument in support of dismissal of this claim. There is nothing of record indicating who maintains the condition of medical cells. Because Plaintiff's allegations regarding the conditions of the infirmary have been lodged against Defendants' Doll and Long with respect to Plaintiff's placement in an allegedly unsafe cell which led to further injury while in their care, the court will allow this claim to proceed against Medical Defendants' Doll and Long.[4]

---

[4] In the court's February 22, 2013 memorandum addressing the first set of motions to dismiss, Corizon was dismissed as a party with respect to Plaintiff's federal claims. (Doc. 37 at 16-19.)

**B.      Eighth Amendment Medical-Care Deliberate Indifference Claim**

In his amended complaint, Plaintiff also alleges that all Defendants, including DOC Defendants, were deliberately indifferent to his serious medical needs with respect to the injuries he sustained in the dining hall and in the infirmary.  In the court's February 22, 2013 memorandum and order addressing the first set of motions to dismiss, the court dismissed with prejudice this same deliberate indifference claim as to DOC Defendants.  (*See* Doc. 37 at 21-23.)  Therefore, the court will not revisit this claim against DOC Defendants Fisher, Hannah, Fouse, Felton, and Rohrer.  DOC Defendants' motion to dismiss (Doc. 48) will be granted here as to these Defendants.

In his amended complaint, Plaintiff has now identified DOC Defendant Driebelbis as the Corrections Health Care Administrator at SCI-Smithfield, who is responsible for the operation of medical services at the facility.[5]  (Doc. 44 ¶ 5.)  As a result, the court will screen this medical-care deliberate indifference claim as to Defendant Driebelbis under 28 U.S.C. § 1915(e)(2).[6]  In doing so, the court will

_____

[5]  In his original complaint, Plaintiff identified Defendant Driebelbis as "an individual adult . . . [who] worked at [SCI-Smithfield] and was the agent, servant and employee of the defendants Department of Corrections."  (Doc. 1 ¶ 5.)

[6]  Pursuant to 28 U.S.C. § 1915(e)(2),

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
   (A) the allegation of poverty is untrue; or
   (B) the action or appeal –

include Defendant Driebelbis in its analysis of this claim as it applies to Medical Defendants Doll and Long.[7]

In their motion to dismiss, Defendants Doll and Long argue that Plaintiff has failed to state a claim of deliberate indifference to his serious medical needs. Upon review, the court agrees and will grant Medical Defendants' motion to dismiss in this regard. As the court also concludes that Plaintiff has failed to state such a claim against Defendant Driebelbis, this claim against him will be dismissed.

In order to establish an Eighth Amendment claim against a defendant for inadequate medical care, a plaintiff must show "(I) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). *See also Rouse*, 182 F.3d at 197. A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of

---

(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted; or
(iii) seeks monetary relief against a defendant who is immune from such relief.

[7] The court need not address this claim as it may apply to Medical Defendant Corizon. *See supra* note 4, at 17.

pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 841. "The official must both be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Thus, a claim that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106.

Further, when an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth Cnty.*, 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White v. Napolean*, 897 F.2d 103, 108-10 (3d Cir. 1990); s*ee also Estelle*, 429 U.S. at 105-06

20

(holding that medical malpractice is insufficient basis upon which to establish an Eighth Amendment violation); *Rouse*, 182 F.3d at 197 ("It is well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"); *Lanzaro*, 834 F.2d at 346 (concluding that mere allegations of malpractice do not raise issues of constitutional import).

Here, in his amended complaint, Plaintiff alleges that after he fell at the dining hall table, he was immediately transported to the medical department and examined by a physician's assistant. He was treated with medication and his injured wrist was wrapped. When he experienced pain the following day in his cell, he was transported to an outside hospital for treatment, including x-rays, on the same day. Upon his return to SCI-Smithfield, Plaintiff was placed in a temporary infirmary cell for observation and prescribed further medication. Unfortunately, while in that temporary cell, Plaintiff lost consciousness and fell again. However, when discovered by a corrections officer, he was immediately transported to an outside hospital for treatment, including x-rays and a CT scan. When he returned to SCI-Smithfield, he was placed in a psychological observation cell and prescribed medication. Within two days of his return, he was notified that the x-rays and CT scan revealed no abnormalities. Although he was still in discomfort, he was released from the infirmary and given a cane to assist him with walking. In the days that

followed, Plaintiff was visited by medical department staff, his meals were delivered, and he was required to leave his cell only to retrieve medication. When his condition worsened, Plaintiff was given an MRI that revealed a herniated disc and was referred to a neurologist, who recommended treatment including EGG and EKG testing and cortisone shots. The medical department, including Defendants Driebelbis, Long, and Doll, did not follow the recommendation of cortisone shots.

Upon review, these allegations in the amended complaint demonstrate that the three Defendants were not deliberately indifferent to Plaintiff's medical needs after he fell in the dining hall. Rather, Plaintiff was provided with medical attention and prescriptions to ease his discomfort. Unfortunately, despite this medical attention, Plaintiff continued to suffer pain and discomfort. This is clearly a case where Plaintiff was given medical attention but was dissatisfied with the course of treatment and subsequent results. As stated above, an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *Durmer*, 991 F.2d at 69; *Spruill*, 372 F.3d at 235.

Moreover, Plaintiff's allegation that Defendants Driebelbis, Long, and Doll refused to follow the neurologist's recommendation of cortisone shots is not sufficient to state a claim for deliberate indifference. *Brownlow v. Chavez*, 871 F. Supp. 1061, 1064 (S.D. Ind. 1994) ("The Eighth Amendment does not guarantee a

prisoner's choice of a physician, a mode of treatment or a place of treatment, nor does or could it guarantee a particular outcome or level of comfort in the face of physical maladies." (internal citations omitted)); *see also Estelle*, 429 U.S. at 107 (holding that the failure of medical defendants to order an x-ray for complaints of back pain does not state a claim for deliberate indifference where other treatment was provided). At most, Plaintiff's allegations amount to a disagreement with medical treatment provided. Again, where treatment is offered, the mere allegation of an opinion difference between a patient and a doctor, or between two medical professionals, does not amount to "deliberate indifference to a serious medical need." *See White*, 897 F.2d at 110 ("[T]here may . . . be several acceptable ways to treat an illness."); *Young v. Quinlan*, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (stating that an inmate's disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief under section 1983). Thus, Plaintiff's complaint that he did not receive the cortisone treatment while he was also receiving other treatment is not sufficient to state a claim that Defendants Driebelbis, Long, and Doll were deliberately indifferent to his serious medical needs. As Plaintiff has failed to establish an Eighth Amendment violation with respect medical treatment for injuries sustained as a result of the fall in the dining hall, Medical Defendants' motion to

dismiss will be granted in this regard, and this claim will be dismissed as to Defendants Driebelbis, Long, and Doll.

## C. Negligence Claims

Plaintiff has also alleged pendant state law claims of negligence in his amended complaint related to the conditions of the dining hall and the infirmary, as well as related to his medical care.[8] The court will separately address these claims as they apply to both sets of Defendants.[9]

### 1. Negligence related to condition of dining hall

With respect to the negligence claim related to the condition of the dining hall tables, DOC Defendants argue that Plaintiff has failed to state a claim against Defendant Driebelbis. In support, they contend that as the CHCA, Defendant Driebelbis had nothing to do with the condition of the dining hall tables. (Doc. 49 at

---

[8] In the court's February 22, 2013 memorandum addressing the first set of motions to dismiss, the court retained supplemental jurisdiction over these claims. (*See* Doc. 37 at 28-30.)

[9] In his original complaint, Plaintiff alleged a claim of "negligent supervision" against Medical Defendants. (Doc. 1 ¶ 38.) In its memorandum addressing the first set of motions to dismiss, the court found that Plaintiff had failed to allege each Defendants' negligence and how it was the proximate cause of his injury, and thus dismissed without prejudice this claim for negligent supervision. (Doc. 37 at 28.) The court, however, afforded Plaintiff the opportunity to reassert his claim of negligence against the individually-named Defendants in an amended complaint. (*Id.*) In the amended complaint, Plaintiff has again alleged a claim of negligent supervision, but it is identical to the claim that was dismissed in the court's previous memorandum. (Doc. 50 ¶ 35.) Thus, the court will again dismiss this claim of negligent supervision, but will now dismiss it with prejudice. As Plaintiff has already been afforded the opportunity to reassert this claim against these Defendants and has failed, the court finds it would be futile to permit him to again attempt to reassert this claim as to Medical Defendants. *See Alston*, 363 F.3d at 236.

8.)  They also stress that Plaintiff does not claim that he notified Defendant Driebelbis of his concerns with the tables' condition.  (*Id*.)  As a result, Defendant Driebelbis cannot be linked to any of the elements of a cause of action for negligence here.  In his brief in opposition, Plaintiff does not contest these assertions, but instead focuses his argument on the negligence claim related to his fall in the infirmary.  (*See* Doc. 54 at 3.)  From a review of the amended complaint, and upon consideration of Plaintiff's failure to oppose DOC Defendants' assertions in this regard, the court concludes that Plaintiff has failed to state a claim of negligence relating to the fall from the dining table against Defendant Driebelbis.  Thus, this claim will be dismissed as to this Defendant.  The claim will proceed, however, as to Defendants Fisher, Hannah, Fouse, Felton, and Rohrer.

The same reasoning and conclusion also applies to Medical Defendants.  From a review of the amended complaint, Plaintiff has alleged no facts regarding this claim that relate to Medical Defendants.  As Plaintiff has failed to allege each Medical Defendants' negligence as it relates to the fall from the dining table and how it was the proximate cause of his injury, the court will dismiss this claim against Medical Defendants.

## 2.  Negligence related to conditions of infirmary

Plaintiff has also alleged that all Defendants were negligent with respect to the conditions of the infirmary where he was housed after he fell in the dining hall.  In their motion to dismiss, DOC Defendants make no argument in support of dismissal of this claim.  Therefore, this claim shall proceed against all DOC Defendants.

For their part, Medical Defendants make no initial argument in favor of dismissal of this claim, but do state, "it is unclear exactly what conduct of Dr. Long and/or Dr. Doll fell below the standard of care."  (Doc. 46 at 13.)  In his opposition, Plaintiff contends "the [Medical] Defendants were negligent by placing Plaintiff in a hazardous environment considering his condition without the benefit of safety precaution, which was the result of his injury(s) in the SCI-Smithfield infirmary."  (Doc. 53 at 5.)  In their reply, Medical Defendants counter, "To the extent that the prisoner complains that the facility was defective, he has failed to allege any facts that support the contention that any of the Medical Defendants had a possessory or controlling interest in the prison facilities."  (Doc. 56 at 1-2.)  However, in his amended complaint, Plaintiff does allege that Defendants Long and Doll directed Plaintiff to be held in the infirmary for observation.  (Doc. 50 ¶ 18.)  He does not make any such allegation with respect to Corizon.  As such, this claim may proceed against Defendants Long and Doll, but will be dismissed as to Defendant Corizon.

### 3. Negligence related to Plaintiff's Medical Care

Plaintiff also asserts a negligence claim related to his medical care subsequent to his fall from the dining table against all Defendants. The court will discuss both sets of Defendants separately.

First, DOC Defendants Fisher, Hannah, Fouse, Felton, and Rohrer argue that they are statutorily immune from suit with regards to this claim. Under Pennsylvania's sovereign immunity statute, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. Cons. Stat. Ann. § 2310. Further, at 42 Pa. Cons. Stat. Ann. § 8522, the General Assembly specifically waived sovereign immunity in nine areas, including cases involving medical professional liability.[10]

---

[10]   The nine exceptions to sovereign immunity pursuant to 42 Pa. Cons. Stat. Ann. § 8522(b) are:

> (1) operation of any motor vehicle in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) care, custody, or control of personal property in the possession or control of Commonwealth parties; (4) dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous condition of highways under the jurisdiction of Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements; (6) care, custody, or control of animals in the possession or control of a Commonwealth party; (7) sale of liquor at Pennsylvania liquor stores; (8) acts of a member of the Pennsylvania military forces; and (9) administration, manufacture and use of toxoid or vaccine.

However, it is well-settled that immunity is waived only for claims asserted against health care employees, and not to individuals who are not medical professionals. *McCool v. Dep't of Corr.*, 984 A.2d 565, 570 (Pa. Cmwlth. 2009) (interpreting 42 Pa. Cons. Stat. Ann. § 8522(b)(2)).

Here, Plaintiff's medical negligence claim against DOC Defendants Fisher, Hannah, Fouse, Felton, and Rohrer is barred by Pennsylvania's sovereign immunity statute. While the claim does fall within the category of waiver for acts of health care employees of Commonwealth agency medical facilities or institutions, *see* 42 Pa. Cons. Stat. Ann. § 8522(b)(2), these named Defendants from SCI-Smithfield are not health care employees.[11] Thus, the medical negligence claim set forth against DOC Defendants Fisher, Hannah, Fouse, Felton, and Rohrer will be dismissed.

Second, DOC Defendants claim that Plaintiff has failed to comply with Pennsylvania Rule of Civil Procedure 1042.3 ("Rule 1042.3"), by not filing a valid certificate of merit with this medical malpractice claim against Defendant Driebelbis.

Rule 1042.3 provides, in pertinent part,

In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the

---

[11] As set forth in the amended complaint, Defendant Fisher is the Warden; Defendant Hannah is the Deputy Warden; Defendant Fouse is the Safety Manager; Defendant Felton is the Maintenance Manager; and Defendant Rohrer is the Food Service Manager. All Defendants were employed at SCI-Smithfield during the events relevant to the amended complaint.

28

plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

* * *

(d) The court, upon good cause shown, shall extend the time for filing a certificate of merit for a period not to exceed sixty days. A motion to extend the time for filing a certificate of merit must be filed by the thirtieth day after the filing of a notice of intention to enter judgment of non pros on a professional liability claim under Rule 1042.6(a) or on or before the expiration of the extended time where a court has granted a motion to extend the time to file a certificate of merit, whichever is greater. The filing of a motion to extend tolls the time period within which a certificate of merit must be filed until the court rules upon the motion.

Pa. R. Civ. P. 1042.3(a), (d). The purpose of the required certificate of merit is to

"assure that malpractice claims for which there is no expert support will be terminated

at an early stage in the proceedings." *Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000).

Rule 1042.3(a) applies to both *pro se* and represented plaintiffs and constitutes a rule of substantive state law with which plaintiffs in federal court must comply. *See Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007) (holding that district courts must "appl[y] Rule 1042.3 as substantive state law"); *Paige v. Holtzapple*, No. 1:08-cv-0978, 2009 WL 2588849, *3 (M.D. Pa. Aug. 19, 2009) (citing *Iwanejko*, 249 F. App'x at 944); *Fernandez v. Dep't of Justice*, No. 3:07-cv-01080, slip op. at 10 (M.D. Pa. Sept. 2, 2008) (recognizing that the plaintiff's *pro se* status "is not a viable basis upon which to excuse compliance with Rule 1042.3 or the requirement of com[i]ng forth with expert medical testimony").

Failure to file a certificate of merit under Rule 1042.3(a) or a motion for an extension under Rule 1042.3(d) is fatal unless the plaintiff demonstrates that his failure to comply is justified by a "reasonable excuse." *Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008); *see also Walsh v. Consol. Design & Eng'g, Inc.*, No. Civ. A. 05-2001, 2007 WL 2844829, *5 (E.D. Pa. Sept. 28, 2007) ("Rule 1042.3 is subject to equitable considerations and a party who fails to timely file a certificate of merit may be relieved from the requirement where the defaulting party provides a reasonable explanation or legitimate excuse.").

In the instant case, Plaintiff has not provided the court with a certificate of merit required by Rule 1042.3 as to Defendant Driebelbis. As a result, the medical negligence claim against DOC Defendant Driebelbis will be dismissed.

In Medical Defendants' motion to dismiss, they argue that Plaintiff cannot sustain a claim of medical malpractice against them without the use of expert testimony, as he has asserted in his certificate of merit.[12] Under Pennsylvania law, there are four elements to a *prima facie* case of medical malpractice: "(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by the patient were a direct result of that harm." *Hoffman v. Brandywine Hosp.*, 661 A.2d 397, 399 (Pa. Super. Ct. 1995). Further, the plaintiff generally must present an expert who will testify, to a reasonable degree of medical certainty, that the acts of the defendants deviated from the acceptable medical standards, and that the deviation constituted a substantial factor in causing the plaintiff's injury. *McCabe v. Prison Health Servs.*, 117 F. Supp. 2d 443, 456 (E.D. Pa. 1997) (citing *Mitzelfelt v. Kamrin*, 584 A.2d 888,

---

[12] After the court granted Plaintiff an extension of time, (*see* Doc. 26), Plaintiff filed a certificate of merit as to Defendants Long, Doll, and Corizon on August 8, 2012, (Doc. 25). In the certificate of merit, Plaintiff asserts that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against referenced defendants." (*Id.*)

892 (Pa. 1990)). This requirement of expert testimony stems from judicial concern that, absent the guidance of an expert, jurors are unable to determine relationships among scientific factual circumstances. *McCabe*, 117 F. Supp. 2d at 456 (citing *Brannan v. Lankenau Hosp.*, 417 A.2d 196, 199-200 (Pa. 1980)).

The only exception to the requirement of expert witness testimony in medical malpractice claims is where the matter is "so simple, and lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even non professional persons." *Brannan*, 417 A.2d at 201 (citations omitted); *see also Lambert v. Soltis*, 221 A.2d 173, 176 (Pa. 1966) (stating that the exception applies to cases where "the matter under investigation is [s]o simple, . . . [s]o obvious, . . . for example, where a gauze pad is left in the body of a patient following an operation" or "where a surgeon engaged in removing a tumor from a patient's scalp would let his knife slip and cut off a patient's ear, or where he undertook to stitch a wound on his patient's cheek and by an awkward move would thrust his needle into the patient's eye"). Here, Plaintiff claims that Medical Defendants ignored his complaints of lower back and leg pain and numbness, as well as denied him a recommended cortisone treatment for pain. Plaintiff claims he is now permanently disabled, no longer able to exercise, and must use a cane to walk, wear a neck brace, and take medications daily for pain. Given Plaintiff's claims of medical malpractice

related to this denial of care and resulting injuries, including a claim of permanent disability, the court concludes that determining whether the decisions of Medical Defendants to deny Plaintiff's treatment were negligent and substantially caused Plaintiff's injuries, is not a matter within the competence of the ordinary layperson, and, therefore, requires expert testimony. Plaintiff has no expert witness to testify on his behalf. As a result, Medical Defendants' motion to dismiss will be granted here with prejudice and the medical malpractice claim against them will be dismissed.

## IV.    Conclusion

For the reasons set forth above, the DOC Defendants' motion to dismiss will be granted in part and denied in part, with the following claims dismissed as follows: (1) the Eighth Amendment conditions of confinement claim related to the dining hall table will be dismissed as to Defendant Driebelbis; (2) the Eighth Amendment medical-care deliberate indifference claim will be dismissed as to all DOC Defendants; (3) the negligence claim related to the condition of the dining hall table will be dismissed as to Defendant Driebelbis; and (4) the medical negligence claim will be dismissed as to all DOC Defendants. As a result of the court's disposition of the DOC Defendants' motion to dismiss, the following claims shall proceed accordingly: (1) the Eighth Amendment conditions of confinement claim related to

the dining hall table shall proceed against DOC Defendants' Fisher, Hannah, Fouse, Felton, and Rohrer; (2) the Eighth Amendment conditions of confinement claim related to the infirmary shall proceed against all DOC Defendants; (3) the negligence claim related to the condition of the dining hall table shall proceed against DOC Defendants' Fisher, Hannah, Fouse, Felton, and Rohrer; and (4) the negligence claim related to the conditions of the infirmary shall proceed against all DOC Defendants. The Medical Defendants' motion to dismiss will be granted in part and denied in part, with the following claims dismissed as follows: (1) the Eighth Amendment conditions of confinement claim related to the dining table will be dismissed as to all Medical Defendants; (2) the Eighth Amendment medical-care deliberate indifference claim will be dismissed as to all Medical Defendants; (3) Plaintiff's claim of negligent supervision will be dismissed as to all Medical Defendants; (4) the negligence claim related to the condition of the dining hall table will be dismissed as to all Medical Defendants; (5) the negligence claim related to the conditions of the infirmary will be dismissed as to Defendant Corizon; and (6) the medical malpractice claim will be dismissed as to all Medical Defendants. As a result of the court's disposition of the Medical Defendants' motion to dismiss, the following claims shall proceed accordingly: (1) the Eighth Amendment conditions of confinement claim related to the infirmary shall proceed against Medical Defendants Doll and Long; and (2) the

negligence claim related to the conditions of the infirmary shall proceed against Medical Defendants Doll and Long.

An appropriate order follows. In addition, a scheduling order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated: January 8, 2014.